## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** _____ |
| **v.** | : | **DATE FILED:** _____ |
| **MATTHEW PARDI,** | : | **VIOLATIONS:** |
| a/k/a "Kevin Parrish," | | |
| a/k/a "Dave Richards," | : | |
| **ASHLEY HARS,** | | **18 U.S.C. § 1343 (wire fraud - 18 counts)** |
| a/k/a "Ashley Adams," | : | **18 U.S.C. § 2314 (interstate transportation** |
| a/k/a "Andrea Walsh," | | **of property obtained through fraud– 2 counts)** |
| a/k/a "Anastasia Getty," | : | **18 U.S.C. § 1028A (aggravated identity theft –** |
| a/k/a "Emily Frieda," and | | **5 counts)** |
| **PROUD AMERICAN VANLINES LLC** | : | **18 U.S.C. § 2 (aiding and abetting)** |
| f/k/a **MOVING ACCOUNTING** | | **Notice of forfeiture** |
| **DEPARTMENT LLC** | : | |
| d/b/a **First Call Relocations, Alliance** | | |
| **Movers, American Eagle Moving,** | : | |
| **East Coast Moving and Storage,** | | |
| **Gateway Moving and Storage,** | : | |
| **Prestige World Wide Moving,** | | |
| **Reliable Moving, Safeway Moving** | : | |
| **System, Supreme Moving and** | | |
| **Storage, Titan Moving and Storage,** | : | |
| **Trans World Van Lines, and United** | | |
| **Movers Group** | : | |

## INDICTMENT

## COUNTS ONE THROUGH EIGHTEEN

**THE GRAND JURY CHARGES THAT:**

At all times relevant to this indictment:

1.     Defendant MATTHEW K. PARDI was a resident of Fort Lauderdale,

Florida. Defendant PARDI used multiple false names to conceal his identity, including the

following: Kevin Parrish and Dave Richards.

2.     Defendant ASHLEY LYNN HARS was a resident of Plantation, Florida.

Defendant HARS used multiple false names to conceal her identity, including the following: Ashley Adams, Andrea Walsh, Anastasia Getty, and Emily Frieda.

3.     Defendant PARDI owned and operated defendant PROUD AMERICAN VAN LINES LLC, a Florida corporation. At the times set forth in the indictment, Proud American Van Lines LLC was known as Moving Accounting Department LLC ("M.A.D."). M.A.D. filed the following "fictitious" names with the State of Florida Division of Corporations, reporting that it was doing business using these names: First Call Relocations, Alliance Movers, American Eagle Moving, East Coast Moving and Storage, Gateway Moving and Storage, Prestige World Wide Moving, Reliable Moving, Safeway Moving System, Supreme Moving and Storage, Titan Moving and Storage, Trans World Van Lines, United Movers Group.

4.     On or about December 17, 2019, M.A.D. changed its name to Proud American Vanlines LLC.

5.     The Federal Motor Carrier Safety Administration (FMCSA) was an agency within the United States Department of Transportation (USDOT). FMCSA's responsibilities included establishing and enforcing safety regulations for commercial motor vehicle operators and drivers, in particular, Title 49, Code of Federal Regulations, Part 375, governing the transportation of household goods by motor carriers.

## FMCSA RULES AND REGULATIONS

6.     Interstate moves are governed by FMCSA rules and regulations. In order to lawfully provide interstate moving services involving loading or unloading household goods from a personal residence, a company must be registered as a household goods motor carrier (a Mover) with the FMCSA.

7.     All prospective Movers must apply to operate as a motor carrier and

2

receive a USDOT number by filling out an OP-1 form, also known as a Form MCSA-1, through the FMCSA. On the OP-1 and MCSA-1 forms, all applicants must disclose, under penalty of perjury, all relationships with any other FMCSA-regulated entity within the past three years, including any ownership interests or management positions. Further, applicants must also file a Motor Carrier Identification Report, Form MCS-150, when applying to register a new company, and when updating a USDOT registration.

8.    All moving estimates for household goods from Movers must be in writing and must clearly indicate whether the estimate is "binding" or "non binding."

9.    Under the terms of a binding estimate, the customer and the Mover must both agree in writing to a fixed charge for all services prior to the start of any work. If an on-site inspection reveals that the weight or cubic feet of the actual shipment significantly exceeds the original estimate, the Mover may seek to re-negotiate the price. However, this must be done prior to any work being done. An attempt to re-negotiate the price after the goods are loaded onto a truck is illegal.

10.    Under the terms of a non-binding estimate, the customer and the Mover agree to an estimate and agree that the final cost of the move will be based upon the actual weight or cubic feet of the shipment, which is determined once the shipment is loaded. While this "non binding" estimate allows some variation in the price once the shipment is loaded, the Mover must deliver the shipment upon receipt of 110% of the estimated cost.

11.    Once the customer's household goods have been loaded and the shipment is ready for transportation, the Mover must provide the customer with a complete itemized inventory and a bill of lading.

12.    It is a crime for a Mover to refuse to deliver household goods where (i) the

3

Mover has provided a binding or non-binding estimate of the cost of the move, and (ii) the customer has tendered either 100% of the charges contained in a binding estimate or 110% of the charges contained in a non-binding estimate.

13.     A moving broker (Broker) is not a Mover. A Broker is an entity that arranges for the transportation of household goods with the customer, and then hires an actual Mover to do the physical move. Brokers are not authorized to transport household goods. Brokers for interstate moves are required to be registered with the FMCSA and to use only Movers that are registered with FMCSA. Brokers are required to disclose their physical location, their registered USDOT number, and their status as a Broker in all marketing materials.

## THE SCHEME TO DEFRAUD

14.     From in or about January 2015, until on or about July 31, 2019, in the Eastern District of Pennsylvania, and elsewhere, defendants

**MATTHEW PARDI,**
**a/k/a "Kevin Parrish,"**
**a/k/a "Dave Richards,"**
**ASHLEY HARS,**
**a/k/a "Ashley Adams,"**
**a/k/a "Andrea Walsh,"**
**a/k/a "Anastasia Getty,"**
**a/k/a "Emily Frieda," and**
**PROUD AMERICAN VANLINES LLC**
**f/k/a MOVING ACCOUNTING DEPARTMENT LLC**
**d/b/a First Call Relocations, Alliance Movers, American**
**Eagle Moving, East Coast Moving and Storage, Gateway**
**Moving and Storage, Prestige World Wide Moving, Reliable**
**Moving, Safeway Moving System, Supreme Moving and**
**Storage, Titan Moving and Storage, Trans World Van**
**Lines, and United Movers Group**

devised and intended to devise a scheme to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

4

## **Manner and Means**

It was part of the scheme that:

15.     Defendants MATTHEW PARDI and ASHLEY HARS created numerous online profiles for moving companies ("the Pardi Companies," each individually referred to as a "Pardi Company" or "Company") that were purportedly located around the country.

16.     Defendants MATTHEW PARDI and ASHLEY HARS falsely claimed each Pardi Company, through its website and marketing emails, was a "family owned" moving company that had been in business for more than a decade, with more than a thousand satisfied customers, using its own trucks and employees. Emails sent from each Pardi Company emphasized "We are the moving company – we are not brokers" and "Our trucks. . . Our Team." The Pardi Companies' websites and emails routinely emphasized that the company provided its own services, for example, stating: "unlike many other movers who are actually brokers, we use our own trucks."

17.     At the inception of the scheme, defendant MATTHEW PARDI identified abandoned Better Business Bureau (BBB) profiles of defunct moving companies and appropriated them to use with a Pardi Company. However, after defendant ASHLEY HARS joined the scheme, the strategy evolved, and the defendants were able to create the illusion that a moving company had been in business for more than a decade by locating corporations that had gone dormant, fraudulently reinstating them by falsely using the name of the original owner of the corporation in documents filed with secretaries of state for several states, and then after the corporation has been reinstated, taking control of the company.

18.     In order to create new Pardi Companies, defendant ASHLEY HARS located dormant corporations in Illinois, Kansas, Virginia, and elsewhere, and filed documents

with the respective state government to reinstate the corporation, including paying outstanding fees and filing overdue annual reports, falsely using, and often fraudulently signing, the name of the owner of the corporation.

19.     Once defendant ASHLEY HARS caused the dormant corporation to be reinstated in good standing with the Secretary of State, the defendants changed the name of the newly revived corporation to a Pardi Company, in order to attribute the dormant corporation's years of existence to a Pardi Company, and changed the corporate officers to Pardi affiliates, making the takeover of the dormant corporation complete.

20.     Once defendants MATTHEW PARDI and ASHLEY HARS had control of the previously dormant corporation and had changed the name to a Pardi Company, the defendants applied for accreditation from the BBB, using false contact and corporate information, in order to deceive the BBB into believing that the Pardi Company website was accurate. Similarly, the defendants created false profiles with MyMovingReviews.com (MMR), a website designed to protect consumers from fraudulent moving services, and Yelp!, a Yellow Pages style review site.

21.     Defendants MATTHEW PARDI and ASHLEY HARS registered each Pardi Company with FMCSA, submitting false information regarding the qualifications of the company, including such items as the number of trucks and drivers. Although the defendants conducted the transactions with FMCSA, they hid their association with the Pardi Company by registering the Company in the name of a third party.

22.     Although defendants MATTHEW PARDI and ASHLEY HARS had hidden defendant PARDI's affiliation with the new Pardi Company from the FMCSA and provided false ownership information on the Company's website, the defendants registered the

6

Pardi Company as a "fictitious name" for Pardi's M.A.D. corporation in the state of Florida, stating that M.A.D. was doing business under the Pardi Company's name, in order to allow defendant PARDI to receive the payments made to the Pardi Company in the M.A.D. business accounts.

23. To further bolster the false claims made on each Pardi Company's website and to optimize each Pardi Company's appearance on internet search engines, defendants MATTHEW PARDI and ASHLEY HARS wrote and purchased false "5 star" reviews for each Pardi Company's website, beginning as much as a year before the Pardi Company actually began providing moving services, falsely claiming that the Pardi Company had provided excellent "5 Star" service in non-existent moves. As defendant PARDI described it, the scheme was to "make profiles and post for a year before we use the company."

24. In addition to paying individuals to place false "5 Star" reviews for the Pardi Companies, defendant MATTHEW PARDI solicited individuals to place false negative ("1 star") reviews of the defendants' competitors. Defendant PARDI owned a website named AlertMovingScam.com and arranged to post negative information about competitors' moving companies to that site.

25. Once defendants MATTHEW PARDI and ASHLEY HARS had successfully created an internet presence for a Pardi Company, defendants PARDI and HARS directed the sales staff of M.A.D., defendant PARDI's wholly owned corporation, to make false representations to customers who sought estimates from the Pardi Company. At the direction of and for the benefit of defendant PARDI, the sales staff repeated the false claims from the Pardi Company's website, asserting that the Pardi Company had its own trucks, its own crews, and serviced its own moves.

7

26.     The training manual for the defendants' sales staff likewise falsely distinguished the Pardi Company that the staff was selling from major van lines and from brokers, falsely asserting that the Pardi Company would not use third parties:

> A moving carrier, such as we do [sic], own their own trucks and warehouses – they're not just a name and phone number floating around on the Internet. A carrier employs part- and full-time staff who are highly trained in the moving industry. A carrier also often depends on references and repeat customers for business and because of that, strive for great customer service. A moving carrier is also licensed, insured, and accredited by major business, transportation and regulatory organizations. Lastly, a moving carrier is fully responsible for lost or damaged goods and therefore work diligently to prevent mistakes, but are always prepared to address these situations when they come up.
> a.) Own their own trucks, have their own crews and service their own moves.
> b.) The best service for the most reasonable rate.
> c.) Most Carriers are family Owned and Operated.
> d.) Client deals directly with the inhouse staff throughout the entire process of the move.
> e.) No third parties. No broker fees.

27.     Defendants MATTHEW PARDI and ASHLEY HARS arranged for a moving software company (the Software Company") to send emails to prospective clients, using templates falsely completed by the defendants, falsely claiming that the Pardi Company had been "family owned and operated" for decades, claiming as much as "62 years" in business, depending on the incorporation date of the stolen dormant company, and consistently asserting that "we are the moving company" and "we are not brokers," and "we never outsource labor."

28.     Once a Pardi Company was operational, defendants MATTHEW PARDI and ASHLEY HARS employed several different methods to defraud customers who were seeking to move. The defendants' sales staff initially provided a reasonable estimate, to ensure that a Pardi Company would be competitive with legitimate businesses in order to obtain a deposit from the customer. After the customer paid a deposit, the sales staff instigated a "quality

8

assurance" (QA) call, and increased the price of the move, falsely stating that the customer had more goods than had previously been included in the estimate. The defendants placed special emphasis on this increase, at times paying the sales staff a bonus of $50 for a 50% price increase (referred to as a "bump") and $100 for a 100% increase. After increasing the price of the move in the QA process, the Pardi Company again routinely increased the price of the move after goods were loaded onto the moving truck, in violation of FMCSA regulations. If the customer refused to sign for the increased price, the defendants caused the driver to refuse to deliver the customer's household goods.

29. Even after increasing the cost of the move over the estimate more than once, the defendants still sometimes refused to deliver goods without increased payments at delivery. As a result, many customers never received their household goods or had to pick the goods up themselves, renting a truck and driving to a warehouse, after seeking assistance from FMCSA.

30. Although the Pardi Company claimed that it would use its own trucks and its own employees to service moves, instead, moves were often serviced by third-party drivers who were not employed by the defendants, and who used rental trucks.

31. When a customer booked a reservation with a Pardi Company, the customer was required to pay a deposit of 35 percent of the estimated cost of the move. Defendant MATTHEW PARDI trained his sales staff to tell customers that this deposit was "risk free." Defendant PARDI also trained the sales staff to emphasize the number of years that the Pardi Company's website falsely claimed it had been business.

32. The defendants' goal was to create so many Pardi Company profiles with false positive reviews, that when one of those companies was ultimately destroyed by negative

reviews and complaints that resulted from fraudulent price increases, theft, and lack of service, the defendants would have numerous other Pardi Company profiles available to use to continue their scheme. Some customers who had sought to compare prices by receiving estimates from multiple movers in actuality received multiple estimates from Pardi Companies.

33.    As part of this scheme, defendants MATTHEW PARDI and ASHLEY HARS and their associates created and used the following Pardi Company names, websites, and USDOT numbers: American Eagle Moving (americaneaglemoving.net), USDOT number 3030473; Alliance Movers (alliancemoversinc.com), USDOT number 2398933; Titan Moving and Storage (titanmovingandstorage.com), USDOT number 2910112; First Call Relocations (firstcallrelocations.com), USDOT number 3088995; Trans World Van Lines, Inc. (transworldvanlinesinc.com, transworldvanlines.net), USDOT number 3088995; Safeway Moving System (safewaymovingsystem.com), USDOT number 3166589; Gateway Moving and Storage (gatewaymovingandstorage.com), USDOT number 3094080; Prestige Worldwide Moving (prestigeworldwidemoving.com), USDOT number 2569326, among others.

34.    From January 1, 2016 to March 31, 2019, as a result of the scheme, M.A.D. received revenue of $12,244,938.

## The Wires

35.    On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendants

**MATTHEW PARDI,**
**a/k/a "Kevin Parrish,"**
**a/k/a "Dave Richards,"**
**ASHLEY HARS,**
**a/k/a "Ashley Adams,"**
**a/k/a "Andrea Walsh,"**
**a/k/a "Anastasia Getty,"**

10

**a/k/a "Emily Frieda," and
PROUD AMERICAN VANLINES LLC
f/k/a MOVING ACCOUNTING DEPARTMENT LLC
d/b/a First Call Relocations, Alliance Movers, American
Eagle Moving, East Coast Moving and Storage, Gateway
Moving and Storage, Prestige World Wide Moving, Reliable
Moving, Safeway Moving System, Supreme Moving and
Storage, Titan Moving and Storage, Trans World Van
Lines, and United Movers Group**

for the purpose of executing the scheme described above, caused to be transmitted by means of

wire communication in interstate commerce the signals and sounds described below, each

transmission constituting a separate count:

| Count | Date | Description |
|-------|------|-------------|
| 1 | 12/2/2017 | Email purportedly from Transworld Van Lines, sent from Florida, to A.K. in Philadelphia, in the Eastern District of Pennsylvania, providing estimate for moving services |
| 2 | 4/18/2018 | Email purportedly from Alliance Movers, sent from Florida, to A.D. in Philadelphia providing estimate for moving services |
| 3 | 4/18/2018 | Email purportedly from American Eagle Moving, sent from Florida, to M.W. in Philadelphia, PA regarding moving services |
| 4 | 4/18/2018 | Email purportedly from Titan Moving and Storage, sent from Florida, to M.W. in Philadelphia, PA providing estimate for moving services |
| 5 | 5/9/2018 | Email purportedly from Titan Moving and Storage, sent from Florida, to T.M. in Philadelphia, PA providing estimate for moving services |
| 6 | 5/16/2018 | Email purportedly from Titan Moving and Storage, sent from Florida, to K.W. in Philadelphia, PA providing estimate for moving services |
| 7 | 5/28/2018 | Email purportedly from Titan Moving and Storage, sent from Florida, to K.N. in Collegeville, PA regarding moving services |

11

| Count | Date | Description |
|-------|------|-------------|
| 8 | 5/31/2018 | ATM withdrawal in Philadelphia, PA, accessing a bank mainframe in Toronto, Canada |
| 9 | 6/2/2018 | Email purportedly from Alliance Movers, sent from Florida, to M.L. in Downington, PA providing estimate for moving services |
| 10 | 6/4/2018 | Email purportedly from Titan Moving and Storage, sent from Florida, to K.N. in Collegeville, PA providing estimate for moving services |
| 11 | 8/2/2018 | Email purportedly from First Call Relocation Services, sent from Florida, to K.K., in Collegeville, PA providing estimate for moving services |
| 12 | 8/7/2018 | Email purportedly from FCRS sent from Florida to J.A. in Bangor, PA, providing an estimate for moving services |
| 13 | 12/10/2018 | Email from S.S. in Bryn Mawr, Pennsylvania, to First Call Relocations Services in Florida, regarding claims for damage |
| 14 | 1/7/2019 | Telephone call from K.B. in Philadelphia, PA to Gateway in Florida seeking delivery of delayed household goods |
| 15 | 1/14/2019 | Email purportedly from Gateway Moving and Storage, sent from Florida, to P.H. in Bethlehem, PA providing estimate for moving services |
| 16 | 1/21/2019 | Email purportedly from Safeway Moving Systems, sent from Florida, to P.H. in Bethlehem, PA providing estimate for moving services |
| 17 | 1/31/2019 | Telephone call from K.B. in Philadelphia, PA to Gateway in Florida regarding move in progress |
| 18 | 4/15/2019 | Email purportedly from Allstates Moving and Storage, sent from Florida, to H.M. in Haverford, PA providing estimate for moving services |

All in violation of Title 18, United States Code, Section 1343.

12

## COUNTS NINETEEN THROUGH TWENTY

### (INTERSTATE TRANSPORTATION OF PROPERTY OBTAINED THROUGH FRAUD)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 13 and 15 through 34 of Counts One through Eighteen are incorporated here.

2.      On or about the dates set forth below, in the Eastern District of Pennsylvania, and elsewhere, defendants:

**MATTHEW PARDI,**
**a/k/a "Kevin Parrish,"**
**a/k/a "Dave Richards,"**
**ASHLEY HARS,**
**a/k/a "Ashley Adams,"**
**a/k/a "Andrea Walsh,"**
**a/k/a "Anastasia Getty,"**
**a/k/a "Emily Frieda," and**
**PROUD AMERICAN VANLINES LLC**
**f/k/a MOVING ACCOUNTING DEPARTMENT LLC**
**d/b/a First Call Relocations, Alliance Movers, American**
**Eagle Moving, East Coast Moving and Storage, Gateway**
**Moving and Storage, Prestige World Wide Moving, Reliable**
**Moving, Safeway Moving System, Supreme Moving and**
**Storage, Titan Moving and Storage, Trans World Van**
**Lines, and United Movers Group**

unlawfully transported and caused to be transported in interstate commerce, and aided and abetted the transportation in interstate commerce of, property having a value of $5,000 or more, knowing the same to have been taken by fraud:

| Count | Victim | Dates | From | To |
|-------|--------|-------|------|-----|
| 19 | M.W. | 5/10/2018 to 12/14/2018 | Philadelphia, PA | Los Angeles, CA |
| 20 - | A.D. | 5/31/2018 to 12/14/2018 | Philadelphia, PA | Atlanta, GA |

In violation of Title 18, United States Code, Sections 2314 and 2.

13

## COUNT TWENTY-ONE

### (AGGRAVATED IDENTITY THEFT)

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about April 26, 2017, to on or about June 16, 2017, in the Eastern

District of Pennsylvania and elsewhere, defendants

**MATTHEW PARDI,**
a/k/a "Kevin Parrish,"
a/k/a "Dave Richards," and
**ASHLEY HARS,**
a/k/a "Ashley Adams,"
a/k/a "Andrea Walsh,"
a/k/a "Anastasia Getty,"
a/k/a "Emily Frieda,"

knowingly and without lawful authority possessed and used a means of identification of another

person, that is, the name of B.A.M, as the authorized officer of A.B.C. Storage & Moving Co.,

during and in relation to wire fraud, knowing that the means of identification belonged to another

actual person.

In violation of Title 18, United States Code, Sections 1028A(a)(1), (c)(5).

14

## COUNT TWENTY-TWO

### (AGGRAVATED IDENTITY THEFT)

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about September 14, 2018, to April 23, 2019, in the Eastern District of Pennsylvania and elsewhere, defendants

**MATTHEW PARDI,**
**a/k/a "Kevin Parrish,"**
**a/k/a "Dave Richards," and**
**ASHLEY HARS,**
**a/k/a "Ashley Adams,"**
**a/k/a "Andrea Walsh,"**
**a/k/a "Anastasia Getty,"**
**a/k/a "Emily Frieda,"**

knowingly and without lawful authority possessed and used a means of identification of another person, that is, the name of A.K., as the authorized officer of Allstates Moving and Storage LLC, during and in relation to wire fraud, knowing that the means of identification belonged to another actual person.

In violation of Title 18, United States Code, Sections 1028A(a)(1), (c)(5).

15

## COUNT TWENTY-THREE

### (AGGRAVATED IDENTITY THEFT)

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about July 10, 2017, to on or about August 17, 2017, in the Eastern

District of Pennsylvania and elsewhere, defendants

**MATTHEW PARDI,**
a/k/a "Kevin Parrish,"
a/k/a "Dave Richards," and
**ASHLEY HARS,**
a/k/a "Ashley Adams,"
a/k/a "Andrea Walsh,"
a/k/a "Anastasia Getty,"
a/k/a "Emily Frieda,"

knowingly and without lawful authority possessed and used a means of identification of another

person, that is, the name of P.A.A., as the authorized officer of American Eagle Enterprises, Inc.,

during and in relation to wire fraud, knowing that the means of identification belonged to another

actual person.

In violation of Title 18, United States Code, Sections 1028A(a)(1), (c)(5).

16

## COUNT TWENTY-FOUR

### (AGGRAVATED IDENTITY THEFT)

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about September 28, 2017 to on or about November 9, 2017 in the

Eastern District of Pennsylvania and elsewhere, defendants

**MATTHEW PARDI,**
**a/k/a "Kevin Parrish,"**
**a/k/a "Dave Richards," and**
**ASHLEY HARS,**
**a/k/a "Ashley Adams,"**
**a/k/a "Andrea Walsh,"**
**a/k/a "Anastasia Getty,"**
**a/k/a "Emily Frieda,"**

knowingly and without lawful authority possessed and used a means of identification of another

person, that is, the name of R.C, as the authorized officer of CDC Storage Corp., during and in

relation to wire fraud. knowing that the means of identification belonged to another actual person.

In violation of Title 18, United States Code, Sections 1028A(a)(1), (c)(5).

17

## COUNT TWENTY-FIVE

### (AGGRAVATED IDENTITY THEFT)

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about January 15, 2019 to on or about January 16, 2019, in the

Eastern District of Pennsylvania and elsewhere, defendants

**MATTHEW PARDI,**
**a/k/a "Kevin Parrish,"**
**a/k/a "Dave Richards," and**
**ASHLEY HARS,**
**a/k/a "Ashley Adams,"**
**a/k/a "Andrea Walsh,"**
**a/k/a "Anastasia Getty,"**
**a/k/a "Emily Frieda,"**

knowingly and without lawful authority possessed and used a means of identification of another

person, that is, the name of C.W, as the authorized officer of Transworld Group LLC, during and

in relation to wire fraud, knowing that the means of identification belonged to another actual

person.

In violation of Title 18, United States Code, Sections 1028A(a)(1), (c)(5).

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 18, United States Code, Sections 1343

and 2314, set forth in this indictment, defendants

**MATTHEW PARDI,**
a/k/a "Kevin Parrish,"
a/k/a "Dave Richards,"
**ASHLEY HARS,**
a/k/a "Ashley Adams,"
a/k/a "Andrea Walsh,"
a/k/a "Anastasia Getty,"
a/k/a "Emily Frieda," and
**PROUD AMERICAN VANLINES LLC**
**f/k/a MOVING ACCOUNTING DEPARTMENT LLC**
**d/b/a First Call Relocations, Alliance Movers, American**
**Eagle Moving, East Coast Moving and Storage, Gateway**
**Moving and Storage, Prestige World Wide Moving, Reliable**
**Moving, Safeway Moving System, Supreme Moving and**
**Storage, Titan Moving and Storage, Trans World Van**
**Lines, and United Movers Group**

shall forfeit to the United States of America any property that constitutes, or is derived from,

proceeds traceable to the commission of such violations including, but not limited to, the sum of

$12,244,938.

2.      If any of the property subject to forfeiture, as a result of any act or

omission of the defendants:

(1)      cannot be located upon the exercise of due diligence;

(2)      has been transferred or sold to, or deposited with, a third party;

(3)      has been placed beyond the jurisdiction of the Court;

(4)      has been substantially diminished in value; or

(5)      has been commingled with other property which cannot be divided

19

without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28,

United States Code, Section 2461(c).

A TRUE BILL:

**GRAND JURY FOREPERSON**

Ronald Sarock for

**JENNIFER ARBITTIER WILLIAMS**
**United States Attorney**

No. _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

MATTHEW PARDI, et. al.

INDICTMENT

Counts

18 U.S.C. ' 1343 (wire fraud - 18 counts); 18 U.S.C. § 2314 (interstate transportation   of property obtained through fraud– 2 counts); 18 U.S.C. § 1028A (aggravated identity theft –5 counts); Notice of forfeiture



Filed in open court this _____ day,

Of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____